FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 1 9 2023

TAMMY H. DOWNS, CLERK
By: _____
                                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BRITTNEY ANN DEVAZIER,           )
     Plaintiff,                  )
v.                               )        Case № 3:23-cv-75-KGB
                                 )
THE SPRINGS ARKANSAS;            )
BATESVILLE HEALTHCARE,           )
LLC, doing business as THE       )
SPRINGS BATESVILLE;              )
BATESVILLE REALTY                )
HOLDINGS, LLC; WELLSPRING        )
HEALTHCARE, LLC; THE             )
WELLSTONE GROUP LLC;             )
CASA HEALTHCARE LLC;             )
WELLSTONE BATESVILLE             )
MANAGEMENT LLC; JACOB            )
TAUB; ISAAC GUTMAN; CHAIM        )
HERZBERG; ALEXANDER              )
HOFFMAN; THE SPRINGS             )
ARKANSAS LLC, and JOHN           )
DOE 1,                           )
     Defendants.                 )

## FIRST AMENDED COMPLAINT

Plaintiff Brittney Ann Devazier pleads her first amended

complaint against Defendants The Springs Arkansas; Batesville

Healthcare, LLC, doing business as The Springs Batesville; Batesville

Realty Holdings, LLC; Wellspring Healthcare, LLC; The Wellstone Group

LLC; Casa Healthcare LLC; Wellstone Batesville Management LLC; Jacob Taub; Isaac Gutman; Chaim Herzberg; Alexander Hoffman; The Springs Arkansas LLC; and John Doe 1; all jointly, severally, and as partners doing business as The Springs Arkansas:

1.      This First Amended Complaint is being filed no later than 21 days of the service of the responsive pleading, an Answer, *Document No. 23*, so no leave of Court is require to file this Amended Complaint. FED. R. CIV. P. 15(a)(1)(B).   This case is about a complexly organized skilled nursing home business's violation of federal law by failing to allow a licensed nursing home's administrator restoration to her job in violation of the Family and Medical Leave Act and failing to offer that administrator with the right to continuation of health insurance coverage under the Employee Retirement Income Security Act's Consolidated Omnibus Budget Reconciliation Act's provisions.

2.      Brittney Ann DeVazier is a resident and citizen of Horseshoe Bend, Izard County, Arkansas.  At all times relevant to this complaint, she was a resident and citizen of Batesville, Independence County, Arkansas.

3.     The Springs Arkansas is an unknown entity with its corporate offices located at 425 W Broadway St. N, Suite M, North Little Rock, Arkansas 72114.  Aside from that office, all other corporate Defendants except The Springs Arkansas LLC disclose their main office as 362 East Kennedy Blvd. in Lakewood, New Jersey 08701.  On information and belief, The Springs Arkansas is a partnership comprised of or alternatively an alter ego of one or more of the other Defendants in this case.  The Springs Arkansas's Chief Executive Officer is Defendant Chaim Herzberg, and it may be served with process through him.  Its Vice President of Operations is Todd Vallery.  Both of those persons acted directly or indirectly in the interest of an employer to DeVazier, sending her correspondence about her FMLA leave on letterhead from both "The Springs Batesville" and "The Springs Arkansas."

4.     The Springs Arkansas holds itself out as a partnership which employs more than 1,000 persons in Arkansas at its 21 skilled nursing facilities which do business using The Springs logo and trade name as part of a separately registered fictitious name.  The Springs Arkansas owns, manages, and operates, directly and indirectly, the skilled nursing facility located at 1975 White Drive in Batesville, Arkansas

72501, which does business as The Springs Batesville. DeVazier was the licensed nursing home administrator of that facility at the times relevant to her claims pleaded in this complaint.

5.    Batesville Healthcare, LLC, doing business as The Springs Batesville is an Arkansas limited liability company with its principal place of business at 362 East Kennedy Blvd., Lakewood, New Jersey 08701. The Springs Batesville is a registered fictitious name for Batesville Healthcare, LLC. Batesville Healthcare, LLC, operates the skilled nursing facility located at 1975 White Drive in Batesville, Arkansas 72501, and is listed as the name for The Springs Batesville's registration with the Arkansas Department of Human Services. Batesville Healthcare, LLC, is subject to service of process through its registered agent, Business Filings Incorporated, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201. Defendants Jacob Taub, Isaac Gutman, Chaim Herzberg, and Alexander Hoffman are listed as the direct, individual owners and members of Batesville Healthcare, LLC, on public filings for skilled nursing facilities. Jacob Taub is the President of Defendant Wellspring Healthcare, LLC and Defendant The Wellstone Group, LLC.

6.     Batesville Realty Holdings, LLC is an Arkansas limited liability company with its principal place of business at 352 East Kennedy Blvd., Lakewood, New Jersey 08701. Batesville Realty Holdings, LLC holds legal title to the skilled nursing facility located at 1975 White Drive in Batesville, Arkansas 72501, and leases or rents that space to its related entities through The Springs Arkansas. Batesville Realty Holdings, LLC, is subject to service of process through its registered agent, Business Filings Incorporated, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.

7.     Wellspring Healthcare, LLC, is a New Jersey limited liability company with its principal place of business at 352 East Kennedy Blvd., Lakewood, New Jersey 08701. Wellspring Healthcare, LLC is registered to do business in the State of Arkansas, and was organized by some of the same persons who own an interest in Batesville Healthcare, LLC. Wellspring Healthcare, LLC, manages the skilled nursing facility located at 1975 White Drive in Batesville, Arkansas 72501, and is subject to service of process through its registered agent, Corporate Creations Network Inc., at 609 SW 8th Street #600, Bentonville, AR 72712.

8.    The Springs Arkansas LLC is a New Jersey limited liability company with its principal place of business at 820 Bear Tavern Road in West Trenton, New Jersey 08628, where it is subject to service of process through its registered agent, Business Filings Incorporated.  It is not registered to do business in the State of Arkansas and has no registered fictitious names.  The Springs Arkansas LLC has answered in this case claiming it employed persons who supervised DeVazier's employment at the times relevant to this Complaint.  The Springs Arkansas LLC is thus an alter ego for or company that acted directly in the interest of DeVazier's employer as an individual, joint, or secondary employer of DeVazier.

9.    The Wellstone Group LLC is a New Jersey limited liability company with its principal place of business at 362 East Kennedy Blvd., Lakewood, New Jersey, 08701, where it is subject to service of process.  Its member and manager is Alexander Hoffman, one of the owners of Batesville Healthcare, LLC.  Jacob Taub, another owner of Batesville Healthcare, LLC, is the President of The Wellstone Group LLC.  The Wellstone Group LLC is the primary investment firm behind The Springs Arkansas, advertises for job vacancies at the 21 skilled nursing facilities

doing business under The Springs trade name, and is publicly reported as the company behind and a part of The Springs Arkansas. DeVazier understood The Wellstone Group LLC as a company involved in her employment at the skilled nursing facility located at 1975 White Drive in Batesville, Arkansas.

10.    Casa Healthcare LLC is a New Jersey limited liability company with its principal place of business at 362 East Kennedy Blvd., Lakewood, New Jersey, 08701, where it is subject to service of process. Casa Healthcare LLC is an alternate name on the real property tax card for the skilled nursing facility located at 1975 White Drive in Batesville, Arkansas 72501, which does business as The Springs Batesville and employed DeVazier.

11.    Wellstone Batesville Management LLC is a New Jersey limited liability company with its principal place of business at 362 East Kennedy Blvd., Lakewood, New Jersey, 08701, where it is subject to service of process. On information and belief, The Springs Arkansas incorporated a number of Wellstone Management limited liability companies in New Jersey for the purpose of participating in the management and operation of some of the 21 skilled nursing facilities

operated by The Springs Arkansas. Wellstone Batesville Management LLC is a part of the Wellstone Group LLC's investment in and operation of The Springs Arkansas, including the management of the skilled nursing facility located at 1975 White Drive in Batesville, Arkansas 72501, which does business as The Springs Batesville and employed DeVazier.

12.    Jacob Taub is a resident and citizen of Lakewood, New Jersey. He can be served at 510 Plante Avenue, Toms River, New Jersey 08755. Taub owns 28% of Batesville Healthcare, LLC. He is the president of Wellspring Healthcare, LLC and The Wellstone Group LLC. Taub is an owner, officer, director partner, member, and stockholder in The Springs Arkansas, and the other corporate Defendants named herein, such that Taub is an individual, joint, or secondary employer of DeVazier. On information and belief, Jacob Taub is also the plan administrator of the group health plan which provided coverage to DeVazier at all times relevant to this Complaint, and Taub was obligated by the plan to provide DeVazier with notice of her rights to continuation of her health insurance coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

13.    Isaac Gutman is a resident and citizen of Lakewood, New Jersey.  He can be served at 25 Clayton Court, Lakewood, New Jersey 08701.  Gutman owns 28% of Batesville Healthcare, LLC.  He is an owner, officer, director partner, member, and stockholder in The Springs Arkansas, and the other corporate Defendants named herein, such that he is an individual, joint, or secondary employer of DeVazier.

14.    Chaim Herzberg is a resident and citizen of Pomona, New York.  He can be served with process at 15 Ravenna Dr., Pamona, NY 10970.  Herzberg owns 15% of Batesville Healthcare, LLC.  Herzberg is the Chief Executive Officer of The Springs Arkansas and The Springs Batesville.  He is an owner, officer, director, partner, member, and stockholder in The Springs Arkansas, and the other corporate Defendants named herein, such that he is an individual, joint, or secondary employer of DeVazier.  Herzberg acted directly or indirectly towards DeVazier as her employer.

15.    Alexander Hoffman is a resident and citizen of Lakewood, New Jersey.  He can be served at 10 Cedar Drive, Lakewood, New Jersey, 08701.  Hoffman owns 28% of Batesville Healthcare, LLC.  He is an owner, officer, director, partner, member, and stockholder in The Springs

Arkansas, and the other corporate Defendants named herein, such that he is an individual, joint, or secondary employer of DeVazier.

16.    John Doe 1 is an unknown and unnamed individual or corporate entity which acted directly or indirectly as DeVazier's employer at all times relevant to this Complaint, which owned, operated, managed, directly or indirectly, the skilled nursing facility located at 1975 White Drive, Batesville, Arkansas, and acted as an owner, officer, director, partner, member, and stockholder in The Springs Arkansas, and other corporate Defendants named herein, such that it should be an individual, joint, or secondary employer of DeVazier. ARK. CODE ANN. § 23-79-210. An Affidavit in compliance with Arkansas' John Doe statute is attached as Exhibit A and incorporated by reference.

17.    All of the named Defendants herein are and were are at all times relevant to this complaint acting jointly, severally, and individually as "The Springs Arkansas" and were individually and separately or, in the alternative, joint employers of DeVazier, or alternatively alter egos for one another, or alternatively acted in concert with one another, or alternatively acted in a civil conspiracy as DeVazier's employer, at all times relevant to this Complaint. The purpose of this complex and

complicated structure of The Springs Arkansas was to legally disassociated the separate 21 skilled nursing home facilities in Arkansas that are represented to the world as being a part of and owned by "The Springs Arkansas." All of the Defendants named herein acted jointly, severally, individually, and alternatively as alter egos for one another, alternatively acting in concert with one another, and alternatively in a civil conspiracy with one another, which is all collectively referred to as "The Springs Arkansas."

18.    At all time relevant to this complaint, The Springs Arkansas was engaged in commerce or in an industry affecting commerce and employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. DeVazier was employed by The Springs Arkansas at its Batesville, Arkansas, skilled nursing facility, which is an area where The Springs Arkansas employed fifty or more employees within a 75-mile radius. The Springs Arkansas is and was at all times relevant to this complaint the plan administrator and employer under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), including 29 U.S.C. § 1166. Pleading in the alternative, Jacob Taub is the plan administrator under COBRA for the

group health plan providing coverage to DeVazier at all time relevant to this Complaint and Taub was obligated by that plan to provide DeVazier with notice of her right to continuation of her health insurance benefits but he failed to provide that notice to her.

19.    Jurisdiction is appropriate in this Court based upon federal question jurisdiction.  28 U.S.C. § 1331.  Venue is proper in the Eastern District of Arkansas, Northern Division.

20.    DeVazier was employed by The Springs Arkansas as soon as it acquired the skilled nursing facility in Batesville on or about November 2019, as she had worked there previously as the licensed nursing home administrator.  DeVazier was employed by The Springs Arkansas on a full-time basis as the Administrator of The Springs Arkansas location in Batesville on and after its acquisition.  DeVazier also worked in that facility prior to its acquisition by The Springs Arkansas.  DeVazier had worked in that particular facility for approximately 3 years at the time of her termination.  DeVazier began her employment as a licensed nursing home administrator at that location on or about April 2018 and was responsible for supervising the operation of that skilled nursing home facility in Batesville.

21.    Sometime during the week of March 22, 2021, DeVazier notified The Springs Arkansas about her medical problems, the possibility for her to need a surgical intervention, and the possibility that she would need to take FMLA leave. The Springs Arkansas provided DeVazier with an FMLA certification form to complete.

22.    On or about Sunday, March 28, 2021, DeVazier requested leave under the FMLA to treat a serious health condition. She emailed appropriate persons at The Springs Arkansas, including the regional director Todd Vallery and chief executive officer Chaim Herzberg, about her condition and disclosed her communication of the FMLA certification form to DeVazier's medical provider for completion. An accurate copy of that email correspondence is attached as Exhibit B and incorporated by reference. DeVazier requested time off work to undergo these procedures and recover from them. This was a protected activity under the Family and Medical Leave Act ("FMLA").

23.    DeVazier provided The Springs Arkansas with evidence about her serious health condition and need to take that leave. An accurate copy of her medical provider's Monday, March 29, 2021, certification is attached as Exhibit C and incorporated by reference, with

-13-

redactions in accordance with Federal Rule 5.2. DeVazier was suffering from left paracentral disc herniation, bulging disc, parasthesia to her upper left extremity, severe pain, and limited range of motion in her neck and her left upper extremity. She was referred for neurosurgical services with possible surgical intervention. Her medical provider had treated her for this condition on March 17 and 22, 2021, and certified her condition had began on March 15, 2021 and would persist until June 15, 2021, or until she was released to return to work by a neurosurgeon. The certification made clear that DeVazier suffered from a serious health condition covered by the FMLA and that she would be forced to remain off work for surgery and recovery from that surgery through the middle of June 2021.

24.    On or about Thursday, April 1, 2021, Chaim Herzberg, CEO of The Springs Arkansas, sent a letter to DeVazier by email. An accurate copy of that letter is attached as Exhibit D and incorporated by reference. The letter listed Todd Vallery, the Vice President of Operations and Regional Director of Operations for The Springs Arkansas, as Brittney's immediate supervisor. In that letter, The Springs Arkansas purported to designate DeVazier as a "key employee" under the FMLA and claimed it

may deny restoration to her position if it determined that denial was necessary to prevent substantial and grievous injury to "the Company's operations." This letter was not delivered personally or by certified mail in violation of 29 C.F.R. § 825.219. This notice failed to include any of the requirements of 29 C.F.R. § 825.219(a), including "fully inform[ing] the employee of the potential consequences with respect to reinstatement and maintenance of health benefits." These failures prevented The Springs Arkansas from denying restoration even if substantial and grievous economic injury would result from reinstatement. 29 C.F.R. § 825.219(a).

25. On or about April 4, 2021, DeVazier underwent major surgery to address her serious health condition, including an anterior cervical discectomy and fusion. Soon thereafter, DeVazier notified The Springs Arkansas that she had undergone surgery and would be released to return to work by May 24, 2021, on the advice of her medical professional, many weeks earlier than initially anticipated.

26. On or around April 20, 2021, DeVazier had spoke by phone with Todd Vallery of The Springs Arkansas. In that call, Vallery told DeVazier that most persons recover from her particular surgery in approximately three weeks' time and then return to work. DeVazier

responded that her doctor would not release her to work until May 24. On or about Tuesday, April 20, 2021, Vallery sent a letter to DeVazier from The Springs Arkansas notifying her that, after reviewing her job "description as Administrator [The Springs Arkansas] determined that [it] will suffer substantial and grievous economic injury; and therefore, will deny you job restoration." The reasons for the decision were that DeVazier's position was "integral to the daily operations" and "replacing this key position for the term of your leave would be economically detrimental to the organization[.]" The Springs Arkansas then gave Devazier three days to return to work, by Friday April 23. An accurate copy of this letter is attached as Exhibit E and incorporated by reference. This letter was not delivered personally or by certified mail in violation of 29 C.F.R. § 825.219. This notice failed to include all of the requirements of 29 C.F.R. § 825.219(a) and (b), including "fully inform[ing] the employee of the potential consequences with respect to reinstatement and maintenance of health benefits" and failed to provide DeVazier with a reasonable time to return to work, taking in account the circumstances. These failures prevented The Springs Arkansas from denying restoration

even if substantial and grievous economic injury would result from reinstatement.  29 C.F.R. § 825.219.

27.    DeVazier responded by emailing Todd Vallery on or about April 20, 2021, at 11:06 a.m. that she was unable to return to work by April 23 as she was required to remain off work until May 24, per her previous letter from her medical professional.  The Springs Arkansas responded through Vallery on or about 2:41 p.m. that "to be clear, it is our intention to place a permanent administrator in the Batesville facility very shortly as to avoid economic and financial hardship.  An accurate copy of that email exchange is attached as Exhibit F and incorporated by reference.  These reasons and communications did not comply with the FMLA. 29 C.F.R. §§ 825.218 & 825.219.

28.    On or about May 24, 2021, DeVazier contacted The Springs Arkansas to determine if she would be restored to her position as the Administrator or to an equivalent position.  The Springs Arkansas denied DeVazier's request and indicated it had no jobs available for her.   On or about May 25, 2021, The Springs Arkansas sent DeVazier flowers with the card "wish you a speedy recovery, Cha[i]m, Jacob, Jena, Kindra, & Todd." On information and belief, these persons are or were employees of The

Springs Arkansas, including its CEO and Regional Director of Operations or Vice President of Operations. These communications failed to provide DeVazier with the written notice, in person or by certified mail, of the denial of restoration required by 29 C.F.R. § 825.219(d). On information and belief, The Springs Arkansas did not determine, at that time, if substantial and grievous economic injury would result from reinstatement as required by 29 C.F.R. § 825.219(d).

29.    The Springs Arkansas told DeVazier it would contact her if it had any openings for other administrator positions that became available. Instead of doing so, The Springs Arkansas posted job vacancies for licensed nursing home administrators at its 21 facilities in Arkansas without notifying DeVazier or offering her restoration to those positions.

30.    The Springs Arkansas would not suffer substantial and grievous financial injury if it had followed the FMLA and restored DeVazier to her position. In fact, the Springs of Batesville facility earned a net income of $3.27 million in 2021, which represented an increase from that facility's $953,883 net income in 2020. DeVazier's salary at The Springs Arkansas was around $120,000 annually, and the amount it paid or would have paid a temporary administrator during DeVazier's FMLA

leave, on information and belief, would not be materially different than DeVazier's salary expense and the incremental cost of continuing DeVazier's health insurance. Many of the corporate employees of The Springs Arkansas are licensed nursing home administrators unassigned to specific skilled nursing facilities, moreover, and could have easily filled in for DeVazier during her less than two months of FMLA leave. In fact, one of The Springs Arkansas corporate employees is currently serving as the interim director of the skilled nursing facility in Batesville.

31. The determinations made by The Springs Arkansas about substantial and grievous economic injury defy the FMLA. 29 C.F.R. § 825.218. The test is not whether the employee's absence would cause substantial and grievous injury as The Springs Arkansas indicated in its letters and email; the standard is whether restoration of the employee will cause substantial and grievous economic injury to the operations of the employer. Permanent replacement was avoidable here for less than two months of medical leave and The Springs Arkansas had other equivalent positions to which it could have transferred the temporary replacement or offered to DeVazier when she applied for reinstatement. The Springs Arkansas did neither, in violation of the FMLA. The Springs Arkansas

never determined at any time, moreover, including at the time of DeVazier's request for reinstatement, whether reinstating DeVazier would work a substantial and grievous injury, as required by the FMLA.

32.     The Springs Arkansas's termination of and failure to restore DeVazier to her position as a licensed nursing home administrator upon her request to return to work directly caused damage to DeVazier, including a loss of income, wages, benefits, retirement, paid time off, back pay, front pay, and health insurance. The Springs Arkansas also failed to provide DeVazier with notice of her COBRA-complaint election notice within 14 days of terminating DeVazier or being notified about her termination. Instead, The Springs Arkansas canceled DeVazier's health insurance on or about May 24, 2021, without warning and without any communication about her ability to continue that coverage.

## COUNT I - FMLA INTERFERENCE/ENTITLEMENT

33.     DeVazier reincorporates and re-alleges paragraphs 1 through 32 by reference.

34.     At all times relevant to this complaint, The Springs Arkansas was a covered employer and DeVazier was a covered employee under the Family and Medical Leave Act. 29 U.S.C. §§ 2601–2654. The

Springs Arkansas met all of the statutory standards for coverage. 29 U.S.C. §§ 2611(2)(B)(ii) & (4)(A), *et sequentes*; 29 C.F.R. §§ 825.104(a) & 825.110(a)(3). At all times relevant to this complaint, DeVazier was a covered employee under the FMLA. 29 U.S.C. § 2611(2)(A), *et sequentes*. DeVazier had been employed by The Springs Arkansas for at least twelve months and worked at least 1,250 hours during the previous twelve month period.

35.    On or about March 28, 2021, DeVazier suffered a serious health condition as defined by the FMLA. She was diagnosed with a major medical condition to her back and upper body, requiring several tests, severe pain, and surgical intervention. Complications arising from her surgery required DeVazier to exercise several weeks of FMLA leave for her recovery. 29 C.F.R. § 825.113; 29 C.F.R. § 825.115. DeVazier obtained a medical certification regarding her serious health condition and timely communicated it to The Springs Arkansas as soon as practicable. 29 C.F.R. §§ 825.302–825.304. In the alternative, DeVazier provided The Springs Arkansas with sufficient information for The Springs Arkansas to reasonably determine that the FMLA applied to DeVazier's request for approved leave. The Springs Arkansas accepted DeVazier's FMLA claim

and approved her for FMLA-protected leave and should be equitably estopped from now taking a contrary position.

36.    The FMLA proscribes any action by The Springs Arkansas to interfere with, restrain, or deny DeVazier the protections provided by the FMLA. 29 U.S.C. § 2615(a)(1); 29 U.S.C. § 825.220.  DeVazier had an absolute right under the FMLA to return to her previous position in effect before her request for FMLA leave upon the completion of her FMLA leave in accordance with the United States Department of Labor's interpretations of the FMLA.   Specifically, the FMLA required The Springs Arkansas to allow DeVazier to return to her position as a licensed nursing home administrator.  The Springs Arkansas failed to follow the FMLA by interfering with, restraining, and denying DeVazier that right:

a.    The Springs Arkansas planned to deny DeVazier her rights under the FMLA  soon after she requested FMLA leave on or about March 28, 2021;

b.    On or about April 1, 2021, The Springs Arkansas improperly claimed DeVazier was a key employee which allowed The Springs Arkansas to deny DeVazier restoration to her position if it determined that denial was necessary to prevent substantial and grievous

economic injury to "the Company's operations" despite the lack of applicability of that affirmative defense, on which The Springs Arkansas bears the burden of proof, 29 C.F.R. § 825.218.  The Springs Arkansas failed to provide all of the required notices in 29 C.F.R. § 825.219 and failed to provide that notice in person or by certified mail, all depriving The Springs of the protection of that affirmative defense;

      c.     Following DeVazier's surgery on or about April 4, 2021, The Springs Arkansas improperly claimed that the key employee affirmative defense applied to DeVazier's medical leave because of her job description and substantial and grievous economic injury to The Springs Arkansas if it did not replace her immediately during her FMLA leave, as that job was "integral to the daily operations" and replacing that key position for the term of her leave would be economically detrimental to the organization.  The Springs Arkansas further represented that it would hire a permanent replacement immediately to avoid economic and financial hardship.  These determinations, on which The Springs Arkansas bears the burden of proving as an affirmative defense, are wrong and failed to follow the legal exemption for a key employee under the FMLA, 29 C.F.R. § 825.218; failed to provide the required notice in 29

C.F.R. § 825.219; and failed to provide that notice in person or by certified mail, all depriving The Springs Arkansas of the protection of that affirmative defense;

        d.      The Springs Arkansas denied DeVazier a reasonable time to return to work, affording her only three days' notice beginning on April 20, 2021, of her need to return to work by April 23, 2021, to retain her job duties, in violation of the FMLA. This notice was further given to DeVazier after she reported her surgery and doctor's guidance to remain off work through May 24, 2021, and after The Springs Arkansas indicated it believed persons who experienced similar surgeries to DeVazier would return to work within three weeks' time;

        e.      The Springs Arkansas denied DeVazier restoration as a licensed nursing home administrator at The Springs Arkansas on or about May 24, 2021, after DeVazier had requested a return to work and job restoration, in violation of the FMLA, including failing to analyze the substantial and grievous economic injury from restoration at that time, in violation of 29 C.F.R. § 825.218; and without the required written notice in person or by certified mail in 29 C.F.R. § 825.219, all depriving The Springs of the protection of that affirmative defense; and further by falsely

representing it would notify DeVazier of other available licensed nursing home administrator vacancies at The Springs Arkansas, which it did not do.

f.      The Springs Arkansas has shifted its explanations about its purported reasons for denying DeVazier's right to return to job restoration under the FMLA, including misconstruing the key employee exemption under the FMLA's restoration rights;

g.      DeVazier's attempt to exercise her right to return to her same position and work schedule under the FMLA was, in fact, denied by The Springs Arkansas on or about May 24, 2021, without written explanation delivered in person or by certified mail or analysis of the substantial and grievous economic injury to The Springs Arkansas at that time; and

h.      The Springs Arkansas further intimidated and discouraged DeVazier's exercise of her FMLA rights through these actions.

37.    The Springs Arkansas has therefore denied DeVazier substantive rights under the FMLA for reasons connected with her FMLA leave. The Springs Arkansas indicated that DeVazier satisfied the key employee exemption shortly after she requested FMLA leave and

determined she met that exemption within days of her taking leave. The Springs Arkansas has also shifted its explanations about that key position exemption as the basis for denying DeVazier's right to return to work. It will be The Springs Arkansas's burden to prove it would have terminated DeVazier regardless of her FMLA leave. *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 714–15 (8th Cir. 2008). And The Springs Arkansas's burden to prove the applicability of the key employee exemption. It cannot meet these burdens.

38.    DeVazier's leave from work and continuing health issues which might necessitate further time away from work were the motivating factors in The Springs Arkansas's decision to deny DeVazier restoration to her job, although The Springs Arkansas's intentions are not relevant to an FMLA interference claim.

39.    The Springs Arkansas's violation of the FMLA was not in good faith and The Springs Arkansas has no reasonable grounds for believing its acts and omissions complied with the FMLA.

40.    DeVazier seeks all remedies available to her under the FMLA including lost wages; lost salary; lost employment benefits; other compensation denied or lost; actual monetary losses sustained as a direct

result of the violation; interest; an equal amount of lost wages, lost salary, lost employment benefits, other compensation denied or lost, actual monetary losses sustained as a direct result of the violation, and interest as liquidated damages; other prospective injunctive relief tailored to the harm suffered; a reasonable attorney's fee; reasonable expert witness fees; and other costs of the action as provided by law, prejudgment interest, and postjudgment interest, and other proper relief. 29 U.S.C. § 2617; 29 C.F.R. § 825.220.

## COUNT II - FMLA DISCRIMINATION

41. DeVazier reincorporates and re-alleges paragraphs 1 through 40 by reference.

42. At all times relevant to this complaint, The Springs Arkansas was a covered employer and DeVazier was a covered employee under the Family and Medical Leave Act. 29 U.S.C. §§ 2601–2654. The Springs Arkansas met all of the statutory standards for coverage. 29 U.S.C. §§ 2611(2)(B)(ii) & (4)(A), *et sequentes*; 29 C.F.R. §§ 825.104(a) & 825.110(a)(3). At all times relevant to this complaint, DeVazier was a covered employee under the FMLA. 29 U.S.C. § 2611(2)(A), *et sequentes*. DeVazier had been employed by The Springs Arkansas for at least twelve

months and worked at least 1,250 hours during the previous twelve month

period.

43.     On or about March 28, 2021, DeVazier suffered a serious

health condition as defined by the FMLA.  She was diagnosed with a

major medical condition to her back and upper body, requiring several

medical tests, severe pain, and surgical intervention.  Complications

arising from her surgery required DeVazier to exercise several weeks of

FMLA leave for her recovery.  29 C.F.R. § 825.113; 29 C.F.R. § 825.115.

DeVazier obtained a medical certification regarding her serious health

condition and timely communicated it to The Springs Arkansas as soon as

practicable.  29 C.F.R. §§ 825.302–825.304.  In the alternative, DeVazier

provided The Springs Arkansas with sufficient information for The

Springs Arkansas to reasonably determine that the FMLA applied to

DeVazier's request for approved leave.  The Springs Arkansas accepted

DeVazier's FMLA claim, approved her for FMLA-protected leave, and

should be equitably estopped from now taking a contrary position.

44.     The FMLA proscribes any action by The Springs Arkansas

to interfere with, restrain, or deny DeVazier the protections provided by

the FMLA taken because the employee exercises rights to which she is

entitled under the FMLA. 29 U.S.C. § 2615(a)(1); *Burciaga v. Ravago Americas, LLC*, 791 F.3d 930 (8th Cir. 2015). The Springs Arkansas cannot take materially adverse employment actions against DeVazier that are motivated by DeVazier's exercise of her FMLA rights. DeVazier had an absolute right under the FMLA to request FMLA leave, exercise that leave, to not be discouraged from taking FMLA leave by having an exemption improperly asserted and her leave baselessly cut short due to The Springs Arkansas's wrong opinion about the length of leave she required, and by failing to return to her previous position in accordance with the United States Department of Labor's interpretations of the FMLA. The FMLA required The Springs Arkansas to allow DeVazier to request FMLA leave, take that leave, and return to her position as a licensed nursing home administrator. The Springs Arkansas was legally obligated to refrain from eliminating that position or denying reinstatement in restraint of and in interference with her request for FMLA leave. The Springs Arkansas nevertheless discriminated against DeVazier and treated her differently because of her attempts to exercise her rights under the FMLA:

        a.      The Springs Arkansas planned to deny DeVazier her rights under the FMLA soon after she requested FMLA leave on or about March 28, 2021;

        b.      On or about April 1, 2021, The Springs Arkansas improperly claimed DeVazier was a key employee which allowed The Springs Arkansas to deny DeVazier restoration to her position if it determined that denial was necessary to prevent substantial and grievous injury to "the Company's operations" despite the lack of applicability of that affirmative defense, on which The Springs Arkansas bears the burden of proof, 29 C.F.R. § 825.218, and the failure of The Springs to provide all of the required notice in 29 C.F.R. § 825.219, and failure to provide that notice in person or by certified mail, all depriving The Springs of the protection of that affirmative defense;

        c.      Following DeVazier's surgery on or about April 4, 2021, The Springs Arkansas improperly claimed that the key employee affirmative defense applied to DeVazier's medical leave because of her job description and substantial and grievous economic injury to The Springs Arkansas if it did not replace her immediately during her FMLA leave, as that job was "integral to the daily operations" and replacing that key

position for the term of her leave would be economically detrimental to the organization. The Springs Arkansas further represented that it would hire a permanent replacement immediately to avoid economic and financial hardship. These determinations, on which The Springs Arkansas bears the burden of proving as an affirmative defense, are wrong and failed to follow the legal exemption for a key employee under the FMLA, 29 C.F.R. § 825.218; failed to provide the required notice in 29 C.F.R. § 825.219; and failed to provide that notice in person or by certified mail, all depriving The Springs of the protection of that affirmative defense;

d.    The Springs Arkansas denied DeVazier a reasonable time to return to work, affording her only three days' notice beginning on April 20, 2021, of her need to return to work by April 23, 2021, in violation of the FMLA, and without the required notice and without being served, all as required by the FMLA. This notice was further given to DeVazier after she reported her surgery and doctor's guidance to remain off work through May 24, 2021, and after The Springs Arkansas indicated it believed persons who experienced similar surgeries to DeVazier would return to work within three weeks' time.

e.      The Springs Arkansas DeVazier restoration as a licensed nursing home administrator at The Springs Arkansas on or about May 24, 2021, after DeVazier had requested a return to work and job restoration, in violation of the FMLA, including failing to analyze the substantial and grievous economic injury from restoration at that time, in violation of 29 C.F.R. § 825.218; and without the required written notice in person or by certified mail in 29 C.F.R. § 825.219, all depriving The Springs of the protection of that affirmative defense; and further by falsely representing it would notify DeVazier of other available licensed nursing home administrator vacancies at The Springs Arkansas, which it did not do.

f.      The Springs Arkansas has shifted its explanations about its purported reasons for denying DeVazier's right to return to job restoration under the FMLA, including misconstruing the key employee exemption under the FMLA's restoration rights;

g.      DeVazie's attempt to exercise her right to return to her same position and work schedule under the FMLA was, in fact, denied by The Springs Arkansas on or about May 24, 2021, without written explanation delivered in person or by certified mail or analysis of the

substantial and grievous economic injury to The Springs Arkansas at that time; and

h.    The Springs Arkansas further intimidated and discouraged DeVazier's exercise of her FMLA rights through these actions.

45.    Springs Arkansas has therefore denied DeVazier substantive rights under the FMLA for reasons connected with her FMLA leave. The Springs Arkansas indicated that DeVazier satisfied the key employee exemption shortly after she requested FMLA leave and determined she met that exemption within days of her taking leave. The Springs Arkansas has also shifted its explanations about that key position exemption as the basis for denying DeVazier's right to return to work. It will be The Springs Arkansas's burden to prove it would have terminated DeVazier regardless of her FMLA leave. *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 714–15 (8th Cir. 2008). And The Springs Arkansas's burden to prove the applicability of the key employee exemption. It cannot meet these burdens. DeVazier's leave from work and request for her rights under the FMLA were motivating factors in The Springs Arkansas's decision to deny DeVazier reinstatement and terminate her.

-33-

46.    The Springs Arkansas's violation of the FMLA was not in good faith and The Springs Arkansas has no reasonable grounds for believing its acts and omissions complied with the FMLA.

47.    DeVazier seeks all remedies available to her under the FMLA including lost wages; lost salary; lost employment benefits; other compensation denied or lost; actual monetary losses sustained as a direct result of the violation; interest; an equal amount of lost wages, lost salary, lost employment benefits, other compensation denied or lost, actual monetary losses sustained as a direct result of the violation, and interest as liquidated damages; other prospective injunctive relief tailored to the harm suffered; a reasonable attorney's fee; reasonable expert witness fees; and other costs of the action as provided by law, prejudgment interest, and postjudgment interest, and other proper relief.  29 U.S.C. § 2617; 29 C.F.R. § 825.220.

## COUNT III - FMLA RETALIATION

48.    DeVazier reincorporates and re-alleges paragraphs 1 through 47 by reference.

49.    At all times relevant to this complaint, The Springs Arkansas was a covered employer and DeVazier was a covered employee

-34-

under the Family and Medical Leave Act. 29 U.S.C. §§ 2601–2654. The Springs Arkansas met all of the statutory standards for coverage. 29 U.S.C. §§ 2611(2)(B)(ii) & (4)(A), *et sequentes*; 29 C.F.R. §§ 825.104(a) & 825.110(a)(3). At all times relevant to this complaint, DeVazier was a covered employee under the FMLA. 29 U.S.C. § 2611(2)(A), *et sequentes*. DeVazier had been employed by The Springs Arkansas for at least twelve months and worked at least 1,250 hours during the previous twelve month period.

50.    On or about March 28, 2021, DeVazier suffered a serious health condition as defined by the FMLA. She was diagnosed with a major medical condition to her back and upper body, requiring several medical tests, severe pain, and surgical intervention. Complications arising from her surgery required DeVazier to exercise several weeks of FMLA leave for her recovery. 29 C.F.R. § 825.113; 29 C.F.R. § 825.115. DeVazier obtained a medical certification regarding her serious health condition and timely communicated it to The Springs Arkansas as soon as practicable. 29 C.F.R. §§ 825.302–825.304. In the alternative, DeVazier provided The Springs Arkansas with sufficient information for The Springs Arkansas to reasonably determine that the FMLA applied to

DeVazier's request for approved leave.  The Springs Arkansas accepted DeVazier's FMLA claim and approved her for FMLA-protected leave and should be equitably estopped from now taking a contrary position.

51.    The FMLA proscribes any action by The Springs Arkansas to discharge or in any other manner discriminate against DeVazier for opposing any practice made unlawful by the FMLA.    29 U.S.C. § 2615(a)(2).  The Springs Arkansas nevertheless subjected DeVazier to materially adverse employment actions motivated by DeVazier's protected FMLA conduct, including her assertion of her rights and opposition to The Springs Arkansas's refusal to allow DeVazier to exercise her rights.  DeVazier had an absolute right under the FMLA to request FMLA leave, exercise that leave, to not be discouraged from taking FMLA leave, and to return to her previous position in accordance with the United States Department of Labor's interpretations of the FMLA.  Specifically, the FMLA required The Springs Arkansas to allow DeVazier to request FMLA leave, take that leave, and return to her position as a licensed nursing home administrator, without restraint of and in interference with her request for FMLA leave.  The Springs Arkansas discriminated against DeVazier and treated her differently because of her attempts to exercise

her rights under the FMLA and opposition to The Springs Arkansas's refusal to honor those rights:

        a.      The Springs Arkansas planned to deny DeVazier her rights under the FMLA soon after she requested FMLA leave on or about March 28, 2021, even though DeVazier had engaged in protected activity by requesting leave and certifying her need for leave;

        b.      On or about April 1, 2021, The Springs Arkansas improperly claimed DeVazier was a key employee which allowed The Springs Arkansas to deny DeVazier restoration to her position if it determined that denial was necessary to prevent substantial and grievous economic injury to "the Company's operations" despite the lack of applicability of that affirmative defense, on which The Springs Arkansas bears the burden of proof, 29 C.F.R. § 825.218, and the failure of The Springs to provide all of the required notice in 29 C.F.R. § 825.219 and failure to provide that notice in person or by certified mail, all depriving The Springs of the protection of that affirmative defense;

        c.      Following DeVazier's surgery on or about April 4, 2021, The Springs Arkansas improperly claimed that the key employee affirmative defense applied to DeVazier's medical leave because of her job

description and substantial and grievous economic injury to The Springs

Arkansas if it did not replace her immediately during her FMLA leave, as

that job was "integral to the daily operations" and replacing that key

position for the term of her leave would be economically detrimental to the

organization." The Springs Arkansas further represented that it would

hire a permanent replacement immediately to avoid economic and

financial hardship. These determinations, on which The Springs

Arkansas bears the burden of proving as an affirmative defense, are

wrong and failed to follow the legal exemption for a key employee under

the FMLA, 29 C.F.R. § 825.218; failed to provide the required notice in 29

C.F.R. § 825.219; and failed to provide that notice in person or by certified

mail, all depriving The Springs of the protection of that affirmative

defense;

        d.      DeVazier opposed and objected to the improper April

20 notification denying DeVazier a reasonable time to return to work,

affording her only three days' notice beginning on April 20, 2021, of her

need to return to work by April 23, 2021, to retain her job duties, in

violation of the FMLA. This notice was further given to DeVazier after

she reported her surgery and doctor's guidance to remain off work through

May 24, 2021, and after The Springs Arkansas indicated it believed persons who experienced similar surgeries to DeVazier would return to work within three weeks' time.

e.      In retaliation for DeVazier's protected activities, the Springs Arkansas denied DeVazier restoration as a licensed nursing home administrator at The Springs Arkansas on or about May 24, 2021, after DeVazier had requested a return to work and job restoration, in violation of the FMLA, including failing to analyze the substantial and grievous economic injury from restoration at that time, in violation of 29 C.F.R. § 825.218; and without the required written notice in person or by certified mail in 29 C.F.R. § 825.219, all depriving The Springs of the protection of that affirmative defense; and further by falsely representing it would notify DeVazier of other available licensed nursing home administrator vacancies at The Springs Arkansas, which it did not do.

f.      The Springs Arkansas has shifted its explanations about its purported reasons for denying DeVazier's right to return to job restoration under the FMLA, including misconstruing the key employee exemption under the FMLA's restoration rights;

g.    DeVazier's attempt to exercise her right to return to her same position and work schedule under the FMLA was, in fact, denied by The Springs Arkansas on or about May 24, 2021, without written explanation delivered in person or by certified mail or analysis of the substantial and grievous economic injury to The Springs Arkansas at that time; and

h.    The Springs Arkansas further retaliated against, intimidated, and discouraged DeVazier's exercise of her FMLA rights through these actions.

52.    The Springs Arkansas has therefore discharged and discriminated against DeVazier because of her opposition to The Springs Arkansas's violations of her rights under the FMLA. DeVazier's leave from work, request for her rights under the FMLA, and opposition to The Springs Arkansas's denial of those rights were motivating factors in The Springs Arkansas's decision to deny DeVazier her restoration to work and terminate her.

53.    The Springs Arkansas's violation of the FMLA was not in good faith and The Springs Arkansas has no reasonable grounds for believing its acts and omissions complied with the FMLA.

54.   DeVazier seeks all remedies available to her under the FMLA including lost wages; lost salary; lost employment benefits; other compensation denied or lost; actual monetary losses sustained as a direct result of the violation; interest; an equal amount of lost wages, lost salary, lost employment benefits, other compensation denied or lost, actual monetary losses sustained as a direct result of the violation, and interest as liquidated damages; other prospective injunctive relief tailored to the harm suffered; a reasonable attorney's fee; reasonable expert witness fees; and other costs of the action as provided by law, prejudgment interest, and postjudgment interest, and other proper relief.  29 U.S.C. § 2617; 29 C.F.R. § 825.220.

### COUNT IV - COBRA

55.   DeVazier reincorporates and re-alleges paragraphs 1 through 54 by reference.

56.   At all times relevant to this Complaint, The Springs Arkansas administered The Springs Arkansas's COBRA compliance, including The Springs Arkansas's duty to provide a COBRA letter to DeVazier.

57.   At all times relevant to this Complaint, The Springs

Arkansas had minimum contacts with the State of Arkansas and purposefully availed itself of business in Arkansas sufficient for Arkansas courts to exercise jurisdiction over them.  Specifically, The Springs Arkansas does business in and conducts mailings to Arkansas, including to DeVazier on behalf of The Springs Arkansas.  There is also specific jurisdiction over The Springs Arkansas with Arkansas in that they participated in or handled claims for DeVazier, an Arkansas resident, on behalf of The Springs Arkansas.

58.    DeVazier's health insurance plan through her employment at The Springs Arkansas is a covered group health plan under the Employee Retirement Income Security Act's COBRA provisions, 29 U.S.C. §1161, *et sequentes*.  At all times relevant to this Complaint, The Springs Arkansas normally employed 20 or more employees on a typical business day during the preceding calendar year.  The Springs Arkansas was therefore obligated to offer continuation coverage as defined by 29 U.S.C. § 1162 to DeVazier as her purported termination or denial of return to work was a "qualifying event" as defined by 29 U.S.C. § 1163(2).  The Springs Arkansas was required to notify the plan administrator of the qualifying event within 30 days of the qualifying event.  29 U.S.C. § 1166.

In the alternative, The Springs Arkansas is the plan administrator of the covered group health plan providing insurance to DeVazier.

59.    On information and belief, DeVazier had paid all premiums due to maintain her health insurance coverage during her FMLA leave. In the alternative, The Springs Arkansas has a pattern or practice of not requiring employees to pay health insurance premiums during FMLA leave.

60.    The Springs Arkansas is and was at all times relevant to this Complaint the plan administrator and employer under COBRA, including 29 U.S.C. § 1166.  It failed to provide notice to the plan administrator within 30 days of purportedly terminating DeVazier, and as plan administrator it failed to send DeVazier a COBRA-compliant election notice within 14 days of being notified by The Springs Arkansas about DeVazier's termination.  The Springs Arkansas ended DeVazier's health insurance coverage on or about May 24, 2021, the date DeVazier wished to return to work.  The Springs Arkansas therefore violated COBRA's notice provisions as both an employer and plan administrator. 29 U.S.C. § 1166.  DeVazier seeks all remedies allowed by ERISA and COBRA against The Springs Arkansas, including statutory penalties of up

to $100 a day, and other relief as the Court deems proper, 29 U.S.C. §1132(c)(1); for benefits due her under the terms of her plan, to enforce her rights under the plan, and to clarify her rights, 29 U.S.C. § 1132(a)(1); to enjoin a practice which violates the provisions of COBRA and the plan, or obtain other appropriate equitable relief, to redress such violations, and to enforce the terms of COBRA and the plan, 29 U.S.C. § 1132(a)(3); for coverage of her medical procedures; for costs and a reasonable attorney's fee, 29 U.S.C. § 1132(g).

## COUNT V - ARBITRATION

61.     DeVazier reincorporates and re-alleges paragraphs 1 through 60 by reference.

62.     The Springs Arkansas has raised in its answer a purported mandatory arbitration agreement as a basis for avoiding liability in this Court. To her knowledge, DeVazier never signed or agreed to be bound by a binding arbitration clause with any of the Defendants. The Springs Arkansas failed to attach a copy of that purported arbitration agreement to its answer and the employment manual DeVazier possesses for The Springs Arkansas did not include a binding arbitration provision. DeVazier has requested a copy of this binding arbitration agreement for

The Springs Arkansas she purportedly signed but is unaware if it exists. DeVazier has also indicated her willingness to proceed with an arbitration if such a valid and enforceable agreement does exist that covers her pleaded claims at issue, and hereby reaffirms and gives notice of that intent. *Leja v. Brousseau Management Co. LLC,* 443 F. Supp. 3d 714, 717–719 (M.D. La. 2020). To-date, The Springs Arkansas has not indicated a valid and enforceable agreement which covers DeVazier's claims exists. On information and belief, the agreement The Springs Arkansas has referenced was with her previous employer before DeVazier began work at The Springs Arkansas.

63.    If there is a binding arbitration agreement which is valid and enforceable upon any issue referable to arbitration, then this Court should find The Springs Arkansas is in default of and has waived that arbitration by not disclosing the alleged agreement and proceeding with an arbitration despite DeVazier's notices of same if such a valid and enforceable agreement exists. 9 U.S.C. § 3; *Leja v. Brousseau Management Co. LLC,* 443 F. Supp. 3d 714, 717–719 (M.D. La. 2020). In the alternative, if a binding arbitration agreement which is valid and enforceable upon any issue referable to arbitration exists, DeVazier

petitions to stay these proceedings and compel arbitration of those issues. 9 U.S.C. § 3; *Stahl v. Mehlhaff*, 547 F. Supp. 3d 700, 710 (D.S.D. 2021).

   64.   DeVazier demands a trial by jury as to all issues so triable.

   65.   DeVazier's damages as pleaded exceed $75,000.

WHEREFORE, Plaintiff Brittney Ann DeVazier prays for judgment from and against Defendants The Springs Arkansas; Batesville Healthcare, LLC, doing business as The Springs Batesville; Batesville Realty Holdings, LLC; Wellspring Healthcare, LLC; The Wellstone Group LLC; Casa Healthcare LLC; Wellstone Batesville Management LLC; Jacob Taub; Isaac Gutman; Chaim Herzberg; Alexander Hoffman; The Springs Arkansas LLC; and John Doe 1; all jointly, severally, and as partners doing business as The Springs Arkansas for all remedies available to her under applicable law, including back pay, back wages, liquidated damages, front pay, reinstatement, prospective injunctive relief tailored to the harm she suffered, compensatory damages, punitive damages, lost wages, lost salary, lost employment benefits, other compensation denied or lost, actual monetary losses sustained as a direct result of the violation, statutory damages, and interest; her attorney's fees; her reasonable expert witness fees; and other costs of the action as provided by law, including

prejudgment and postjudgment interest; for a determination that the Defendant's conduct was willful;  remedies allowed her by ERISA and COBRA for these violations including statutory penalties, benefits and rights due under the plan, to enjoin a practice violating COBRA and the plan, equitable relief, for coverage of her medical procedures, for costs and a reasonable attorney's fee; attorney's fees; expert witness fees; costs; prejudgment interest; postjudgment interest; and all other just and proper relief.

Respectfully submitted,

BRITTNEY ANN DEVAZIER

Plaintiff

By: _____

BARRETT S. MOORE
Bar Number 2009118
BLAIR & STROUD
Attorney for Plaintiff
P.O. Box 2135
Batesville, Arkansas 72503
Telephone: (870) 793-8350
E-mail: bsm@blastlaw.com

## DEMAND FOR A JURY TRIAL

Comes Brittney Ann DeVazier and, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands her right of trial by jury as to all issues so triable.

Respectfully submitted,

BRITTNEY ANN DEVAZIER

Plaintiff

By: _____

BARRETT S. MOORE
Bar Number 2009118
BLAIR & STROUD
Attorney for Plaintiff
P.O. Box 2135
Batesville, Arkansas 72503
Telephone: (870) 793-8350
E-mail: bsm@blastlaw.com

# CERTIFICATE OF SERVICE

I served a copy of the forgoing instrument on May 18, 2023, by emailing and depositing it in the U.S. Mails, with sufficient postage prepaid, and addressed to the following persons:

> Michelle M. Kaemmerling
> Daveante Jones
> WRIGHT, LINDSEY & JENNINGS LLP
> 200 West Capitol Avenue, Suite 2300
> Little Rock, AR 72201-3699
> *mkaemmerling@wlj.com*
> *dljones@wlj.com*
>
> **ATTORNEY FOR SEPARATE DEFENDANTS
> THE SPRINGS ARKANSAS; BATESVILLE
> HEALTHCARE, LLC doing business as THE SPRINGS
> BATESVILLE; BATESVILLE REALTY HOLDINGS, LLC;
> WELLSPRING HEALTHCARE, LLC; THE WELLSTONE
> GROUP LLC; CASA HEALTHCARE LLC; WELLSTONE
> BATESVILLE MANAGEMENT LLC; JACOB TAUB;
> ISAAC GUTMAN; CHAIM HERZBERG; and ALEXANDER
> HOFFMAN**

Barrett S. Moore

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BRITTNEY ANN DEVAZIER,            )
     Plaintiff,                )
v.                                )
                                  )
THE SPRINGS ARKANSAS;             )
BATESVILLE HEALTHCARE,            )
LLC, doing business as THE        )
SPRINGS BATESVILLE;               )
BATESVILLE REALTY                 )
HOLDINGS, LLC; WELLSPRING         )
HEALTHCARE, LLC; SYNERGY          )
STAFFING, LLC; THE                )
WELLSTONE GROUP LLC;              )
CASA HEALTHCARE LLC;              )
WELLSTONE BATESVILLE              )
MANAGEMENT LLC; JACOB             )
TAUB; ISAAC GUTMAN; CHAIM         )
HERZBERG; ALEXANDER               )
HOFFMAN; and JOHN DOE 1,          )
     Defendants.               )



## AFFIDAVIT PURSUANT TO
## ARKANSAS CODE ANNOTATED § 16-56-126

Comes Barrett S. Moore, attorney for the Plaintiff Brittney

Ann DeVazier, and being first duly sworn, states as follows below:

    1.   I am counsel for the Plaintiff in the above-captioned

matter. This affidavit is being filed simultaneously with the complaint

in this matter as it includes allegations against "John Doe 1." Plaintiff is uncertain about the true identity of the persons who are, in fact, operating at "The Springs Arkansas" due to a complicated and obtuse corporate structure, and Plaintiff is uncertain about the true identity of the plan administrator for the health insurance plan provided by The Springs Arkansas, all as described in the Complaint. Given that lack of knowledge, Plaintiff is suing a John Doe Defendants for the purpose of later substituting in the true proper Defendant if, in fact, that person or entity has not been named as a party. ARK. CODE ANN. § 16-56-126.

FURTHER AFFIANT SAYETH NOT.

BARRETT S. MOORE

STATE OF ARKANSAS       )
                                 ) ss.
County of Independence    )

        SUBSCRIBED and SWORN to before me on this 27th day of _March_____, 2023.

                                  _____
                                        Notary Public

My Commission Expires:

  _09-17-2031_

DANA J. REYNOLDS
NOTARY PUBLIC - ARKANSAS
INDEPENDENCE COUNTY
My Commission Expires 09-17-2031
Commission No. 1271 6164

-3-

**Barrett Moore**

**Subject:**                        FW: FMLA—Email thread with with Regional and Owner

**From:** Brittney DeVazier <brittneydevazier@gmail.com>
**Date:** March 28, 2021 at 6:21:14 PM CDT
**To:** brittney.devazier@batesville-hc.com
**Subject: FMLA**



Good evening, please see below copy of email content I sent to my practitioner this
afternoon.  Unfortunately, I will be having to go ahead and file FMLA as of where I am at this time with
my condition and pain, I know that I cannot perform my duties & responsibilities as the administrator
until after my appointment on Thursday with the  neuro-surgeon when we will have a clearer picture of
treatment plan and recovery time which my hopes are that this will be a speedy recovery process.
In my whole career and as an administrator, I have never had to take a leave of absence for any reason,
so this is heart breaking and scary at the same time and I am hoping that the outcome will be that I get
to return soon.  I can and will assist anyone remotely with anything you need me to do....with location of
anything you may need from my (office, files, forms, emails, binders, computer files, etc)
access/credential information, anything you all may need.  I will update everyone after I see the neuro
surgeon this Thursday.


Copied Email context I sent to my practitioner below:

Good afternoon Lori,  just wanted to update you that this weekend has not been any better than I was
and worsens when I am a couple of hours away from being able to take anything for pain. During that
time the pain worsens to almost unbearable.  Not Sleeping at night but a few hours at a time and I have
to get up and move around a little because of the pain in my left arm and shoulder.  My arm feels like it
weighs twice as much as my right arm.....my left shoulder, upper arm/elbow, down to my left wrist
constantly dull aches then painful aches ....ROM of head is okay from side to side but looking up or down
is a instant sharp pain. (I have been rotating ibuprofen 800mg and tramadol, taking the muscle relaxer
close to bedtime).  I am now having at times spasms in different places in my arm/shoulder/upper left
back.  It has scared me several times this weekend debating going to ER but knew there is nothing else
they can do and I know nothing else we can do until I see the neuro-surgeon on Thursday, which can't
get here soon enough.

I had really hoped I would be able to work on Monday with the restrictions and know right now that I
cannot perform my job duties in this shape, even for four hours, with the responsibilities/duties that I
hold as the administrator, so I am going to let my corporate office know that I am going ahead and filing
for FMLA in which they had already provided me the forms last week knowing after this coming
Thursday I would most likely be taking FMLA...in my whole career as an administrator,  I have never had
to take a leave of absence for any reason, this is heart breaking and scary at the same time, most
likely they will get an interim in my place until I can return post treatment and/or recovery from this.  I
will be keeping them informed especially after Thursday when we can have a better picture on
treatment plan and recovery time.  I have attached our FMLA form and they will need this completed for
me to file.  I know you are super busy and thank you ahead of time for completing it.  If you have any

1

questions just give me a call. Thank you and I still just can't believe this is happening and I am so ready to be out of pain and discomfort.

Thank you,

*Brittney DeVazier, ADMIN/CDP/CDS*
**Springs of Batesville**
**1975 White Drive**
**Batesville, AR 72501**
<u>**870-698-1853**</u> **(Facility Line)**
<u>**870-**</u>▇▇▇▇ **(Cell #)**

Certification of Health Care Provider for
Employee's Serious Health Condition
(Family and Medical Leave Act)

U.S. Department of Labor

Wage and Hour Division



OMB Control Number: 1235-0003
Expires: 8/31/2021

## SECTION I: For Completion by the EMPLOYER

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: The Springs of Batesville    Karla Lerew

Employee's job title: LNHA                                Regular work schedule: 40

Employee's essential job functions: Daily operations of LongTerm Care Facility

Check if job description is attached: _____

## SECTION II: For Completion by the EMPLOYEE

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: Brittney    DeVazier
First                    Middle                    Last

## SECTION III: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: Lori Steele, APRN  2319 Batesville Blvd Southside, AR 72501

Type of practice / Medical specialty: Steele Healthcare Services, Family Practice Clinic

Telephone: (870    )569-4186                Fax:(870    )569-4187

EXHIBIT
C

PENGAD 800-631-6989

Page 1                                                        Form WH-380-E Revised May 2015

PART A. MEDICAL FACTS

1. Approximate date condition commenced: 3/15/2021

Probable duration of condition: 12 weeks

**Mark below as applicable:**
Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
✔ No ___Yes. If so, dates of admission:

Date(s) you treated the patient for condition:

3/17/2021, 3/22/2021

Will the patient need to have treatment visits at least twice per year due to the condition? ___No ✔ Yes.

Was medication, other than over-the-counter medication, prescribed? ___No ✔ Yes.

Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
___No ✔ Yes. If so, state the nature of such treatments and expected duration of treatment:

Neurosurgeon-possible surgery on cervical spine-12 weeks

2. Is the medical condition pregnancy? ✔ No ___Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

Is the employee unable to perform any of his/her job functions due to the condition: ___ No ✔ Yes.

If so, identify the job functions the employee is unable to perform:

Pushing, pulling, lifting greater than 5 pounds. Repeated turning, twisting, or motion of neck.

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

C6-C7 left paracentral disc herniation, C5-C6 bulging disc, paresthesia to left upper extremity.

Patient referred for neurosurgical services for further evaluatin and treatment with

possible surgical intervention.

Severe pain.

Limited range of motion of neck and left upper extremity.

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ___No ✔ Yes.

    If so, estimate the beginning and ending dates for the period of incapacity: 3/15/2021-6/15/2021

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ___No ✔ Yes.

    If so, are the treatments or the reduced number of hours of work medically necessary? ___No ✔ Yes.

    Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

    Patient will have probable surgical recovery, multiple follow up appointments

    Estimate the part-time or reduced work schedule the employee needs, if any:

    0 hour(s) per day; 7 days per week from 3/15/2021 through 6/15/2021

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ✔ No ___Yes.

    Is it medically necessary for the employee to be absent from work during the flare-ups? ✔ No ___Yes. If so, explain:

    Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency    : ___ times per ___ week(s) ___ month(s)

    Duration: ___ hours or ___ day(s) per episode

Patient may not return to work until released by neurosurgeon. Estimated time off from work is 3/15/2021-6/15/2021 unless released by neurosurgeon prior to that date.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

| | |
|---|---|
| Loni L Stule, APRN | 3/29/2021 |
| Signature of Health Care Provider | Date |

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**
If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29
C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB
control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this
collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining
the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden
estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the
Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC
20210. **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

Form WH-380-E Revised May 2015



## THE SPRINGS
### BATESVILLE

April 1, 2021

Employee name: Brittney DeVazier

Department: Administration

Position: Administrator

Immediate supervisor: Todd Vallery

On March 28th 2021, you requested FMLA leave. At that time, we discussed with you that you were considered a "key employee" as defined by the FMLA. Under the FMLA regulations, as a "key employee", the Company may deny restoration to your position after your FMLA leave, if it determines that it is necessary to prevent substantial and grievous injury to the Company's operations.

THIS LETTER DOES NOT MEAN THAT YOU WILL NOT BE RESTORED TO YOUR POSITION FOLLOWING YOUR LEAVE. A RESTORATION DECISION HAS NOT YET BEEN MADE.

You will be notified as soon as possible if the Company makes a decision that it will deny you job restoration and the reasons for such decision. If your leave has commenced before this decision is made, you will be given a reasonable opportunity to return to work after receiving the notice.

This notification of restricted rights to return from FMLA leave is simply to inform your that you may not have automatic restoration rights to your position following your leave.

If you have any questions, please contact Chaim Herzberg at 347-752-0095.

Signature: _____

Title: CEO

Date: 4/1/2021

EXHIBIT
D



# THE SPRINGS
## ARKANSAS

April 20, 2021

Employee name: Brittany DeVazier

Position: Administrator, The Springs of Batesville

Immediate supervisor: Todd Vallery

On March 28, 2021, you requested FMLA leave. At that time, we discussed with you that you were considered a "key employee" as defined by the FMLA. On April 1, 2021, we sent you a notice outlining your rights under the FMLA regulations as a "key employee" and stating that the Company would notify you as soon as a decision was made about your job restoration.

The Company has reviewed your job description as Administrator and determined that it will suffer substantial and grievous economic injury; and therefore, will deny you job restoration. The Company's reasons for such decision include: your position as administrator is integral to daily operations and replacing this key position for the term of your leave would be economically detrimental to the organization and a permanent administrator is necessary for the facility to be financially stable and maintain the highest level of service for the facility residents and employees.

Because your leave has commenced before this decision was made, you will be given a reasonable opportunity to return to work after receiving the notice. If you do not return by the end of this week, April 23rd you are still entitled to take FMLA leave and upon completion of your leave, you may still seek to return to work though it is likely that your position will be filled by a permanent administrator.

This notification of restricted rights to return from FMLA leave is to inform your that you will not have automatic restoration rights to your position following your leave. If, at the end of your leave, you seek to return to work, the Company will reassess whether substantial and grievous economic injury will occur to the operations and, if so, may still deny your request for reinstatement.

If you have any questions, please contact Todd Vallery at Todd@thespringsar.com.

Signature: _____

Title: Regional Director of Operations

Date: 4/20/2021

EXHIBIT

E

PENGAD 800-631-6989

## Barrett Moore

**Subject:**                    FW: Letter Denying Job Restoration - Brittney DeVazier.pdf

**From:** Brittney DeVazier <brittneydevazier@gmail.com>
**Date:** April 20, 2021 at 3:15:32 PM CDT
**To:** Todd Vallery <todd@thespringsar.com>
**Subject: Re: Letter Denying Job Restoration - Brittney DeVazier.pdf**

Thank you so much Todd! 😊

**Thank you,**

*Brittney DeVazier, ADMIN/CDP/CDS*
**Springs of Batesville**
**1975 White Drive**
**Batesville, AR 72501**
**870-698-1853 (Facility Line)**
**870** ▮▮▮▮▮▮ **(Cell #)**

On Apr 20, 2021, at 2:41 PM, Todd Vallery <todd@thespringsar.com> wrote:

Brittney,

I genuinely hope the best for you in your recovery and that you are able to make a full and pain-free return to your prior self.
To be clear, it is our intention to place a permanent administrator in the Batesville facility very shortly as to avoid economic and financial hardship.
Please do check in once your recovery is complete and we can evaluate if there are any potential opportunities at that time.
This particular set of circumstances has been unfortunate, but it has been a pleasure working with you again. We've known each other quite some time, and whatever works out for you moving forward, I know you will be successful.
Also, if necessary, please do not hesitate to reach out to me personally for any work references or recommendations.

In regards to your personal belongings, I'll be in touch with the facility as well so they can help accommodate collecting things for you.

Please reach out if I can do anything else for you.

Thanks,

Todd Vallery, LNHA, RN
Regional Director of Operations
The Springs of Arkansas


EXHIBIT
F

1

Office: (501) 268-6188
Cell: (479) ███████
Fax: (501) 279-3842

<image001.png>

**From:** Brittney DeVazier <brittneydevazier@gmail.com>
**Sent:** Tuesday, April 20, 2021 11:06 AM
**To:** Todd Vallery <todd@thespringsar.com>
**Subject:** Letter Denying Job Restoration - Brittney DeVazier.pdf

Todd,

Unfortunately, returning by this Friday, April 23rd, is not reasonable due to only being 17 days post surgery and is not in accordance with my surgeon's medical advisement and release date for me to return which is May, 24th as stated on the work release date letter from my surgeon that I sent you, which is due to my surgery and post-op difficulties that I had and recommended recovery time, he will not release me before that date. I am getting better everyday but am still not able to fully function in that capacity at this time. These are my physicians recommendations and post surgery care plan that i need to follow. I also have one more scheduled post-op appointment on May 19th which the surgeon did not want to release me until after that date.

I understand that you need an administrator at the facility before my medical release date, my hopes are that when I contact you the week prior to being released, that my position will still be open and you will consider letting me return as the Licensed Administrator of the facility. I understand that this has been a hardship, and I have thoroughly enjoyed my time spent serving as the Administrator and working with all of you. Since you will be actively looking to permanently replace, I would like to retrieve my personal items and items I purchased and/or brought from Home to retrieve from my office which following is a list of some of the things I can think of without being there:

-My framed license and framed certifications.
-Notary Stamp on my desk and or it may be in one of the desk drawers
-A blue suitcase, a black rolling brief case and black duffel bag,
-my personal pictures of family and desk name plates
—A "admin bible" huge red binder that I personally made years ago and take everywhere with me.—Is on my desk.
—The large painting behind my desk came from my dining room at home and the two bar stools came from my home.
—The flat screen tv on the wall came from my old "game room" at my house (is a huge/heavy older flat screen)

Please advise if there is anything else you will need me to do or if we need a conference call to take place, etc. I can contact Eddie so he can start gathering my things and I can have my husband come retrieve.

Again, this had been such an unfortunate and unexpected situation with my condition, then surgery, etc., I will contact you before my release date to check in....thank you for everything and I sure hope I will have the opportunity to work for you again soon.

2

Thank you,

*Brittney DeVazier, ADMIN/CDP/CDS*
**Springs of Batesville**
**1975 White Drive**
**Batesville, AR 72501**
**870-698-1853 (Facility Line)**
**870-█████████ (Cell #)**